# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

CHILDREN'S ORCHARD, INC., a
Michigan corporation,

                  Plaintiff,

v.

CHILDREN'S ORCHARD STORE
#142, INC., SHIRLEY NOWLING, THE
NOWLING COMPANY, TODD
NOWLING, ERNESTO PINAL,
MARIA PINAL, KID'S KLOSET and
JOHN DOES 1-10,

                  Defendants.

_____/

Case No. 10-10143
Hon. Gerald E. Rosen
Mag. Judge Mark A. Randon

**OPINION AND ORDER REGARDING
DEFENDANTS ERNESTO AND MARIA PINAL AND KID'S KLOSET'S
MOTION TO DISMISS UNDER RULE 12(b)(2) AND
DEFENDANTS SHIRLEY AND TODD NOWLING AND THE NOWLING
COMPANY'S MOTION TO COMPEL ARBITRATION**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____ May 28, 2010 _____

PRESENT:  Honorable Gerald E. Rosen
                    Chief Judge, United States District Court

## I. INTRODUCTION

This matter is presently before the Court on Defendants Ernesto Pinal, Maria Pinal

and Kid's Kloset's motion to dismiss for lack of personal jurisdiction, pursuant to Rule

12(b)(2) of the Federal Rules of Civil Procedure, and on Defendants Children's Orchard

Store #142, Inc., Shirley and Todd Nowling, and The Nowling Company's motion to stay litigation and compel arbitration. Plaintiff Children's Orchard, Inc., (hereinafter "Children's Orchard") commenced this action on January 13, 2010, alleging that Defendants breached a Franchise Agreement and violated the Michigan Uniform Trade Secrets Act. Specifically, Children's Orchard claims that Defendants Shirley Nowling, Todd Nowling, and The Nowling Company, franchise owners of a Children's Orchard clothing resale store in Henderson, Nevada, unilaterally terminated the Franchise Agreement they held with Plaintiff and sold the entire contents of the store and all trade dress and trade secrets to a competitor, Defendants Ernesto and Maria Pinal. Children's Orchard, Inc., also alleges that the Pinals tortiously interfered with the Franchise Agreement.[1]

Each of the two motions pending before the Court has been fully briefed by the parties. Having reviewed the parties' written submissions in support of and opposition to Defendants' motions, as well as the remainder of the record, the Court finds that the pertinent allegations and legal arguments are sufficiently addressed in these materials, and that oral argument would not assist in the resolution of these motions. Accordingly, the Court will decide Defendants' motions "on the briefs." See Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan.

---

[1] Children's Orchard asserts claims against Defendants John Does 1-10, as "individuals domiciled in Nevada who acted in concert with the Nowlings and Ernesto and Maria Pinal to commit the unlawful acts" described in the Complaint. (Compl. ¶ 3(b).)

## II.  FACTS

Children's Orchard, Inc., is a Michigan corporation with its principal place of business in Ann Arbor, Michigan.  Children's Orchard operates a national network of franchise stores that purchase used children's clothing and accessories from the public, and resells them.  Children's Orchard promotes and protects its brand, products and services through a registered trademark ("Children's Orchard®") and other trade dress, trade secrets and business systems.

Defendants Shirley and Todd Nowling, through the Nowling Company, were franchise owners of a Children's Orchard store in Henderson, Nevada (Store #142).  In late 2009, the Nowlings declared bankruptcy and unilaterally terminated the Franchise Agreement they signed with Children's Orchard, which was set to expire in May 2014. In the months preceding the termination, the Nowlings claim that they informed Children's Orchard of their financial difficulty and plans to close the store because it was no longer profitable.  Children's Orchard apparently attempted to negotiate a settlement agreement and to secure a *bona fide* purchaser for Store #142.  Neither the settlement nor the sale was consummated.  Instead, according to Children's Orchard, sometime before December 31, 2009, the Nowlings sold or otherwise transferred (for no consideration) some or all of the contents of Store #142 to Ernesto and Maria Pinal, owners of Kid's Kloset, a newly opened children's clothing resale store located in the same mall.  Maria Pinal is a former employee of Store #142.  She worked for the Nowlings for approximately one year before the franchise store was closed.

Children's Orchard claims that Kid's Kloset "is a sham entity owned by Ernesto and Maria Pinal, for the express purpose of defrauding Children's Orchard and appropriating Children's Orchard's trade dress and trade secrets in order to compete with Children's Orchard, and, upon information and belief, is operated and owned by relatives of another franchisee, referred to herein as John Does 1-10." (Compl. ¶ 19.) Children's Orchard alleges that the Nowlings and Pinals fraudulently documented the transfer in order to make it appear as though a disinterested third party actually purchased the franchise shop. Kid's Kloset allegedly continues to use Children's Orchard trade dress, trade secrets and business system without the consent of the franchisor. Finally, Children's Orchard alleges that the Nowlings unlawfully sold to Kid's Kloset and Ernesto and Maria Pinal property which they had no right to sell under the terms of the Agreement, including, for example, the shop's inventory (on which Children's Orchard retained an option to buy) and all furniture, fixtures, and equipment located on the premises.

In a sworn declaration, Shirley Nowling, the president of the Nowling Company, states that there was no sale of goods and no transfer of confidential information to the Pinals, since proprietary items like Children's Orchard "buy cards" or the confidential operating manual provided to the Nowlings as part of the Franchise Agreement were destroyed before Store #142 closed. (Shirley Nowling Decl. ¶¶ 6, 12.) She further states that there was almost no remaining inventory in Store #142 by mid-December 2009, because she had stopped purchasing clothing from the public in the months prior. The

little remaining inventory in the store was either donated to charity or gifted to the Pinals. Shirley Nowling states that the Nowlings moved out of the area after December 2009, with no intent to continue to operate Store #142.

On January 13, 2010, Children's Orchard filed a complaint against the Nowlings, the Nowling Company, Store #142, the Pinals and Kid's Kloset, alleging two counts of breach of contract, one count of violating the Michigan Uniform Trade Secrets Act, and one count of tortious interference with existing contractual relations. Children's Orchard generally claims that the Pinals and Kid's Kloset, a Nevada sole proprietorship, is using the Children's Orchard business system, trade dress and trade secrets, and that the store is, with the aid of the Nowlings, competing with Children's Orchard by reselling children's clothing and accessories. Children's Orchard seeks both injunctive and monetary relief. The matter is now before the Court on two motions filed by Defendants in lieu of answering the Complaint. First, the Pinals have filed a motion to dismiss for lack of personal jurisdiction. They argue that they never had a contractual relationship with Children's Orchard, nor did they know that Children's Orchard was headquartered in Michigan until they were served with the Complaint in this action. Second, the Nowlings have filed a motion/petition to stay litigation and compel arbitration under the terms of the Franchise Agreement. Children's Orchard opposes both motions. This opinion and order sets out the Court's findings.

## III. DISCUSSION

**A.      The Pinals' Motion to Dismiss for Lack of Personal Jurisdiction**

The Pinals' motion requests that this Court dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. For the reasons explained below, the Court will grant the Defendants' motion in its entirety.

**1.    Burden of Proof**

A defendant may move to dismiss for lack of personal jurisdiction in lieu of answering a complaint. Fed. R. Civ. P. 12(b)(2). Although this matter is before the court on the Pinals' motion to dismiss, Children's Orchard has the burden of establishing the Court's personal jurisdiction over the Pinals. Air Products and Controls, Inc. v. Safetech Intern., Inc., 503 F.3d 544, 549 (6th Cir. 2007); Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002); see also McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780 (1936) (the plaintiff "must allege in his pleading the facts essential to show jurisdiction"). Where, as here, the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than holding an evidentiary hearing or permitting limited discovery, the plaintiff "need only make a *prima facie* showing of jurisdiction." Neogen, 282 F.3d at 887 (quoting CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996). Nevertheless, if the court rules on written submissions alone, the plaintiff may not rest on his pleadings to answer the movant's affidavits, but must set forth, "by affidavit or otherwise [,] . . . specific facts showing that the court has jurisdiction." Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989) (quoting Weller v. Cromwell Oil Co., 504 F.2d 927, 930 (6th Cir. 1974)). Finally, in ruling on a 12(b)(2) motion, the "court will not consider facts

proffered by the defendant that conflict with those offered by the plaintiff," Neogen, 282

F.3d at 887, and must construe the facts presented in the pleadings and affidavits in the

light most favorable to the non-moving party.  See Serras, 875 F.2d at 1214.

## 2.  Personal Jurisdiction

A federal court's exercise of personal jurisdiction in a diversity of citizenship case

must be both (1) authorized by the law of the state in which it sits, and (2) in accordance

with the Due Process Clause of the Fourteenth Amendment.  Intera Corp. v. Henderson,

428 F.3d 605, 615 (6th Cir. 2005); Neogen, 282 F.3d at 888.

### a.  Michigan's "Long-Arm" Statute

Michigan's long-arm statute extends "general" jurisdiction over nonresident

individuals pursuant to Mich. Comp. Laws § 600.701, and "limited" jurisdiction pursuant

to Mich. Comp. Laws § 600.705.  In order to be subject to general jurisdiction in

Michigan, a non-consenting, non-resident individual must have been present in Michigan

or domiciled in Michigan at the time when process was served.  Mich. Comp. Laws §

600.701.  Neither is the case here and Children's Orchard does not argue that Michigan's

long-arm statute authorizes the exercise of general jurisdiction over the Pinals or Kid's

Kloset.

Michigan's long-arm statute extends limited jurisdiction over individuals in a

number of circumstances set out in Mich. Comp. Laws § 600.705:

> The existence of any of the following relationships between an individual or
> his agent and the state shall constitute a sufficient basis of jurisdiction to
> enable a court of record of this state to exercise limited personal jurisdiction

over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:

> (1) The transaction of any business within the state.

> (2) The doing or causing *any* act to be done, or consequences to occur, in the state resulting in an action for tort . . .

Mich. Comp. Laws § 600.705 (emphasis added). Identical language allows Michigan's long-arm statute to extend limited jurisdiction over corporations pursuant to Mich. Comp. Laws § 600.715.[2] In Sifers v. Horen, 385 Mich. 195, 188 N.W.2d 623 (1971), the Michigan Supreme Court held that, for purposes of establishing limited *in personam* jurisdiction, "the word 'any' means just what it says. It includes 'each' and 'every'. . . . It comprehends the 'slightest'." Id. at 199, n. 2, 188 N.W.2d 623. Nevertheless, limited jurisdiction extends only to claims arising from the Defendants' activities within Michigan or those which had an in-state effect. Neogen, 282 F.3d at 888.

As noted above, a federal court has jurisdiction over a defendant "if the defendant is amenable to service of process under the [forum] state's long arm statute, . . . and if the exercise of personal jurisdiction would not deny the defendant [ ] due process." Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog, 954 F.2d 1174, 1176 (6th Cir. 1992) (internal citations omitted). The two inquiries merge where the forum state's long

---

[2] Plaintiff limits its arguments to Mich. Comp. Laws § 600.715(2), for corporations, without acknowledging that the motion to dismiss was filed by both Kid's Kloset, a sole proprietorship, and by Maria and Ernesto Pinal in their *individual capacities*. The Court nevertheless considers the applicability of both the individual and corporation long-arm statutes to the Pinals and Kid's Kloset, since the analysis is the same under both statutes.

arm statute extends the state's jurisdiction to the limits permitted under the due process clause.  Id.  Michigan's long arm statute has been interpreted as conferring "'the maximum scope of personal jurisdiction permitted by the due process clause of the Fourteenth Amendment.'"  LAK, Inc. v. Deer Creek Enter., 885 F.2d 1293, 1298 (6th Cir. 1989) (quoting Chrysler Corp. v. Fedders Corp., 643 F.2d 1229, 1236 (6th Cir. 1981)).  Accordingly, the Court assumes for purposes of analysis that the Pinals/Kid's Kloset's alleged acts caused consequences to occur in Michigan, resulting in the present action in tort, and the Court focuses its inquiry on whether the exercise of limited personal jurisdiction violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

> **b.    Due Process**

The exercise of specific jurisdiction is proper where the claims in the case arise from or are related to the defendant's contacts with the forum state.  Intera, 428 F.3d at 615.  To present a *prima facie* case that the exercise of personal jurisdiction over the Pinals and Kid's Kloset does not offend due process, Children's Orchard must demonstrate that the Pinals have adequate "minimum contacts" with Michigan such that finding personal jurisdiction will not offend "traditional notions of fair play and substantial justice."  International Shoe v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154 (1945).  The Sixth Circuit has articulated the due process requirements as a three-part test:

> First, the defendant must purposefully avail himself of the privilege of

acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Intera, 428 F.3d at 615 (known as the Southern Machine factors set forth Southern Machine Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968)).

### I. Purposeful Availment

The *sine qua non* of personal jurisdiction is the purposeful availment requirement. See Southern Machine, 401 F.2d at 381-82. This factor requires that the defendant "purposefully avail[ ] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of the laws." Burger King v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183 (1985). It ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts or of the "unilateral activity of another party or third person." Id.; Intera, 428 F.3d at 616. To satisfy this requirement, it is not necessary that a defendant be physically present in the forum state. Compuserve, Inc. v. Patterson, 89 F.3d 1257, 1264 (6th Cir. 1996). Rather, even without physical presence, a defendant is subject to a court's jurisdiction if his activities are "purposefully directed" toward the residents of the forum state. Id. (quoting Burger King, 471 U.S. at 476). The Sixth Circuit has also stated that the mere existence of a contract between the defendant and a citizen of the forum state is insufficient to confer specific personal jurisdiction. Calphalon Corp. v. Rowlette, 228 F.3d 718, 722 (6th Cir. 2000).

In this case, the parties do not dispute that the Pinals are residents of Nevada, that Kid's Kloset is a Nevada sole proprietorship, and that neither the Pinals, nor Kid's Kloset is a party to the Franchise Agreement. Instead, Children's Orchard argues that the Pinals and Kid's Kloset purposefully availed themselves of the privilege of conducting activities in Michigan because: (1) they engaged in a fraudulent transfer of Store #142's contents, improperly accepting Children's Orchard trade secrets, trade dress and business system, thereby causing "effects" in Michigan; (2) they had knowledge, actual or constructive, that the Franchise Agreement between Children's Orchard and the Nowlings includes a Michigan choice of law provision; and (3) they conspired to interfere with Children's Orchard's contractual right of first refusal to purchase Store #142 and its inventory. Each of these arguments is discussed below, in turn.

Children's Orchard first argues that the alleged transaction between the Nowlings and the Pinals bears "badges of fraud" and that Defendants thus bear the burden of proving that the transaction was not a sham. Based on these allegations, Children's Orchard then argues that jurisdiction is proper because the Pinals are merely an "alter ego" of the Nowlings and jurisdiction over the Nowlings is not in dispute. As an initial matter, the Court notes that although Children's Orchard generally alleges that the transfer of inventory or other trade dress from Store #142 to the Pinals was done expressly with an intent to defraud, Children's Orchard has not expressly made a claim of "fraudulent transfer" in its Complaint. Fraudulent transfer laws consist of discrete statutes that are derived from the common law and are codified in the Uniform Fraudulent

Conveyances Act (UFCA), the Uniform Fraudulent Transfers Act (UFTA), and the applicable federal Bankruptcy Code provisions. <u>See</u> Peter Spero, Fraudulent Transfers: Applications and Implications § 1:1. Michigan has adopted the UFTA. <u>See</u> Mich. Comp. Laws §§ 566.31-42. Here, Children's Orchard does not purport to invoke the protections of either the UFTA as adopted in Michigan or any other fraudulent transfer statute. Rather, it attempts to use the general language of fraudulent transfer to allude to some form of alter ego liability as a basis for personal jurisdiction. In support of this somewhat muddled argument, Children's Orchard cites case law from the bankruptcy and tax contexts, including <u>In Re Triple Restaurants, Inc.</u>, 422 F.3d 405 (6th Cir. 2005) (bankruptcy appeal); <u>United States v. Isaac</u>, No. 91-5830, 1992 WL 159795 (6th Cir. July 10, 1992) (action to set aside tax liens); <u>United States v. Westley</u>, No. 98-6054, 7 Fed. Appx. 393, 2001 WL 302068 (6th Cir. 2001) (distribution of corporation's assets to shareholders to avoid tax liability); <u>Cooper v. Osbourne</u>, 124 B.R. 726 (Bankr. W.D.Ky. 1989). Even if the Court assumed that a claim of fraudulent transfer was actually and properly alleged in the original Complaint, the fraudulent transfer cases cited by Children's Orchard do not support a finding of personal jurisdiction in this case.[3]

---

[3] For example, Children's Orchard relies on <u>In re Triple Restaurants</u>. In that case, a bankruptcy trustee brought an adversary proceeding to set aside an alleged fraudulent transfer of an insurance policy and to recover the value of the transfer on behalf of the defendant's creditors. 422 F.3d at 407-08. The trustee filed sought relief under the Bankruptcy Code. <u>Id.</u> at 409. The bankruptcy court ordered and the district court affirmed the avoidance of the transfer under 11 U.S.C. §§ 544(b) and 548(a) on the grounds that the transfer was made without valuable consideration and with the intent to defraud the defendant's creditors. <u>Id.</u> The Sixth Circuit affirmed the lower court's findings, concluding that the transfer of the insurance policy bore badges of fraud, in part

12

Furthermore, Children's Orchard claim of alter ego liability must also fail as a basis for finding jurisdiction. As a general rule, each defendant's contacts with the forum state must be assessed individually. Calder v. Jones, 465 U.S. 783, 790, 104 S. Ct. 1482 (1984). However, the actions of one defendant may be attributed to another where one is the "alter ego" of the other, for example, in a subsidiary-parent corporation relationship. See Niemi v. NHK Spring Co., 276 F. Supp. 2d 717, 721 (E.D. Mich. 2003). Here, Children's Orchard alleges that the Pinals are merely an alter ego of the Nowlings. Proof of a corporate alter ego relationship requires that the two enterprises "have substantially

---

because it occurred between close family members or people in confidential relationships. Id. at 414. In this case, Children's Orchard suggests that because Maria Pinal had a close relationship with the Nowlings, as a former employee, the transfer of inventory or other content from Store #142 bears "badges of fraud." However, Children's Orchard cites no legal basis under which this Court might void the transfer of goods and does not allege a creditor/debtor relationship, as was at issue in In re Triple Restaurants. The Court thus finds this case wholly inapposite.

In Isaac, the United States sought to have set aside, as a fraudulent conveyance, a transfer of real property. 1992 WL 159795, at *1. The defendant, who pled guilty to fraud, transferred a house to his sister in order to keep the property from a lien filed due to taxes owed. Id. The Sixth Circuit found that the transfer was surrounded with badges of fraud, including: (1) a close relationship between the parties; (2) a transfer for no consideration; (3) the transferor's continued relationship with the property, for example, in the form of ongoing mortgage, tax and insurance payments on the property; and (4) each party's awareness of the transferor's increasing financial difficulty. Id., at *4. Here, Children's Orchard does not allege that it had a lien or other property interest in the franchise store. Rather, it alleges that the sale of the store violated terms of a contract. Again, the Court finds the law of fraudulent transfer, and in particular, case law arising out of the federal tax code, inapposite. Moreover, as Defendants point out, there is no "close relationship" between the parties as was the case in Isaac, in that Maria Pinal was only a former employee of The Nowling Company. Also, the Nowlings have no "continuing relationship" with the property transferred–there is no evidence that they invest or otherwise draw profits from Kid's Kloset. (See Shirley Nowling Decl. at ¶14.) The other fraudulent transfer cases cited by Children's Orchard are similarly factually distinguishable.

identical management, business, purpose, operation, equipment, customers, supervision, and ownership." Laborers' Pension Trust Fund v. Lange, 825 F. Supp. 171, 176 (E.D. Mich. 1993). "An alter ego is treated as a single continuous employer, and the contractual obligations of one element of the alter ego are therefore binding on the others." Id. The Pinals do not dispute that Kid's Kloset performs the same work or similar work as Store #142, that both stores were located in the same mall in Henderson, Nevada (though not the exact same location within the mall), and that Kid's Kloset may have some of the same customers and equipment as Store #142. However, as Children's Orchard itself admitted in its Complaint, Kid's Kloset is a Nevada sole proprietorship owned and operated by Ernesto Pinal and Maria Pinal. (Compl. ¶ 3(a).) Maria Pinal was an employee of the Nowlings, but never had an ownership interest in Store #142. Moreover, Shirley Nowling attests that she has no involvement, financial or otherwise, in the Kid's Kloset business or with the Pinals. (Shirley Nowling Decl. ¶ 14.) Thus, because the two entities lack substantially identical management, supervision and ownership, Children's Orchard fails to allege facts that support its alter ego theory of liability and personal jurisdiction.

Children's Orchard next argues that, as a general matter, the Pinals purposely availed themselves of the privilege of acting in the forum state by causing effects in that state. In support of this argument, Children's Orchard relies heavily on Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482 (1984), in which the Supreme Court held that a California court properly exercised personal jurisdiction over two Florida residents, a writer and

editor for the National Enquirer magazine, because they intentionally aimed their tortious conduct (an allegedly defamatory article) at a California resident, entertainer Shirley Jones. Id. at 788-89, 104 S. Ct. 1482. Though the article at issue was written and edited in Florida and the Florida defendants had only been to California twice, the Court explained that the defendants knew that the focal point of the article as well as the "brunt of the harm" would be felt in California. Id. at 789-90, 104 S. Ct. 1482. Therefore, jurisdiction was proper based on the "effects" of their conduct in California. Id. Since Calder, federal courts have narrowed this effects test, "such that the mere allegation of intentional tortious conduct which has injured a forum resident does not, by itself, always satisfy the purposeful availment prong." Air Products and Controls, Inc. v. Safetech Intern., Inc., 503 F.3d 544, 552 (6th Cir. 2007) (citing cases). Rather, while effects in the forum state may "enhance" the likelihood of finding purposeful availment, they do not alone satisfy this requirement.

In this case, the Court finds that even if the Court takes Children's Orchard's allegations as true, there is no evidence that the Pinals and Kid's Kloset purposefully availed themselves of the privilege of conducting activities within Michigan, thus invoking the benefits and protections of the state's laws. This case is clearly distinguishable from Calder. In Calder, the nonresident defendants made several phone calls and trips to California, published the article in a national publication with a circulation of over 600,000 copies in California alone, and were fully aware of the potentially devastating effects of their article on the plaintiff. By contrast, here, the facts

15

alleged indicate only that the Pinals were involved in the transfer of contents or inventory from Store #142. The entire alleged transaction occurred within the same mall in Nevada. There is no evidence that the Pinals made phone calls or trips to Michigan, let alone evidence that the Pinals knew that in accepting inventory the "brunt of the harm" would be felt in Michigan. Though the Court acknowledges that the alleged harm is felt at Children's Orchard principal place of business in Michigan, there is no evidence, as there was in <u>Calder</u>, that the Defendants knew that the "focal point" of their actions would be outside Nevada.

Finally, Children's Orchard argues that the Pinals had knowledge, actual or constructive, that the Franchise Agreement between Children's Orchard and the Nowlings includes a Michigan choice of law provision and thus knew that their conduct would cause effects in Michigan. The Pinals submitted declarations stating that they did not know that Children's Orchard had any connection with the State of Michigan until receiving the Complaint in this action. (Maria Pinal Decl. ¶ 11; Ernesto Pinal Decl. ¶ 11.) In its response, Children's Orchard counters generally that the Pinals *must have known* of this connection, because Maria Pinal, while employed by the Nowlings in the franchise shop, would have been required to visit the Children's Orchard national website—a website that shows that Children's Orchard operates a franchise network with locations in various states. Additionally, Children's Orchard alleges that Store #142 received shipments from Children's Orchard in Michigan, such that Maria Pinal "should certainly have known" that the store was part of a franchise whose headquarters was in Michigan.

(Children's Orchard Resp. at 12.) Lastly, in support of their reply, the Pinals submit the sworn declaration of Shirley Nowling, who states that Maria Pinal's sole duties while working at the store were working the cash register, sorting clothes and cleaning toys, and occasionally buying toys or equipment from walk-in traffic.[4] Ultimately, Children's Orchard has failed to set forth persuasive evidence of purposeful availment where there is no specific allegation that the Pinals *actually knew* that their conduct was linked to Children's Orchard, a Michigan entity. On the contrary, Maria Pinal's purported basis of knowledge barely amounts to an attenuated contact.

Even if the Pinals knew that Store #142's franchisor was headquartered in Michigan, Children's Orchard does not explain why this knowledge demonstrates that the Pinals deliberately affiliated themselves with Michigan or that the Pinals could reasonably expect to be hailed into a Michigan court. See Intera, 428 F.3d at 617; Calphalon Corp., 228 F.3d at 723. In Intera, licensors of a fabric treatment process brought action against the licensee's officers for misappropriation of trade secrets. 428 F.3d at 609. The United States District Court for the Middle District of Tennessee,

---

[4] Children's Orchard also makes much of the fact that the Pinals removed Children's Orchard tags from merchandise received from Store #142 and built their own store under a different name: Kid's Kloset. Children's Orchard suggests that this alone is sufficient to create a presumption that the Pinals knew that Store #142's brand and business system were owned by a Michigan entity. This is a logical non sequitur. Kid's Kloset, a sole proprietorship formed by individuals wholly distinct from the Nowlings, could have chosen to take on a different name and different brand for any number of reasons. Moreover, even if the Pinals understood that Store #142 was a franchise, the facts alleged do not indicate why or how they would known that the franchisor was a Michigan corporation or that in accepting certain merchandise or other contents from the store they would be causing harm in Michigan.

dismissed the action with prejudice for lack of personal jurisdiction, and the licensors appealed. Id. at 609-10. The Court of Appeals held that the defendants did not purposefully avail themselves of the privilege of action in Tennessee, as required for the exercise of specific personal jurisdiction, when they allegedly used license agreement to appropriate licensors' "know how" with regard to a fabric treatment process. Id. at 617. The court reached this holding despite the fact that the defendants *knew* that the licensor was based in Tennessee and that the license agreement provided for resolution of disputes in Tennessee, though neither officer was party to the agreement. Id. at 617. The Sixth Circuit explained:

> Plaintiffs argue that Henderson and Englar[, the non-resident corporate officers of the licensee] have purposely availed themselves of the forum state because (1) they used the license agreement between [Plaintiff] Intera and [licensee] Burlington Woven as the vehicle through which they obtained Intera's "know how," which (2) they in turn appropriated to their use and benefit, and (3) they knew the license agreement provides for a Tennessee jurisdictional forum for disputes arising from the agreement and it requires Burlington Industries' employees who have access to Intera's "know how" and technology to keep the information confidential. Plaintiffs, however, do not explain why Henderson's and Englar's knowledge of the choice-of-law provision in the license agreement between Intera and Burlington Woven demonstrates that they deliberately affiliated themselves with Tennessee, or that Henderson and Englar could reasonably expect to become embroiled in possible litigation in Tennessee. See Calphalon Corp., 228 F.3d at 723 (stating that "even though [the defendant] was on notice that the contract was to be governed by Ohio law, it did not make deliberate affiliation with that state nor could it reasonably foresee possible litigation there"). We reached this conclusion in Calphalon notwithstanding the fact that the defendant in that case was an actual party to the contract in dispute. Id. at 720. In the present action, neither Henderson nor Englar was a party to the license agreement between Intera and Burlington Woven.

Intera, 428 F.3d at 617. (Emphasis added.)  Here, the Pinals have an even more attenuated

relationship to Children's Orchard than the defendants in Intera.  They were not officers

of The Nowling Company, the Children's Orchard franchisee.  Thus, even if the Pinals

could not have accessed certain trade dress, trade secrets or the Children's Orchard

business system in the absence of the Children's Orchard-Nowlings Franchise

Agreement, there is no explanation knowledge of the Agreement equates with Defendants

deliberately affiliating themselves with Michigan.

      As to Children's Orchard's allegations of conspiracy, the Court finds that these too

must fail.  Totally unsupported allegations of conspiratorial activities with tortious

consequences do no not support jurisdiction.  See Chrysler Corp. v. Fedders Corp., 643

F.2d 1229 (6th Cir. 1981), cert. denied 102 S. Ct. 388, 454 U.S. 893.  Here, Children's

Orchard has not alleged facts to support a finding of conspiracy.

      *ii.    Arising From*

      The second prong of the Southern Machine test is that the plaintiff's cause of

action must "arise from" the defendant's contacts with the forum state.

> [The Sixth Circuit] articulated the standard for this prong in a number of
> different ways, such as whether the causes of action were "made possible
> by" or "lie in the wake of" the defendant's contacts, Lanier v. Am. Bd. of
> Endodontics, 843 F.2d 901, 909 (6th Cir.1988), or whether the causes of
> action are "related to" or "connected with" the defendant's contacts with the
> forum state, Youn v. Track, Inc., 324 F.3d 409, 419 (6th Cir. 2003) (quoting
> Third Nat. Bank in Nashville v. WEDGE Group Inc., 882 F.2d 1087, 1091
> n. 2 (6th Cir. 1989)).

Air Products and Controls, Inc., 503 F.3d at 553.  In addition, the Sixth Circuit has

characterized this standard as a "lenient standard" and has explained that the cause of action need not "formally" arise from defendant's contacts. Bird v. Parsons, 289 F.3d 865, 875 (6th Cir. 2002).

In this case, Children's Orchard's cause of action against the Pinals was not made possible by the Pinals' contacts with Michigan. Instead, the cause of action is based on provisions and obligations created by the Franchise Agreement. The agreement provided for the application of Michigan law. However, as discussed above, the Pinals are not parties to the Franchise Agreement. Moreover, the transfer of contents or inventory from Store #142 by the Nowlings to the Pinals occurred wholly outside Michigan and did not involve Children's Orchard or the Franchise Agreement. Accordingly, the present action does arise from the Pinals and Kid's Kloset's contacts with the forum state.

### iii. Substantial Connection

The final Southern Machine prong is that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." Southern Machine, 401 F.2d at 381. This requirement exists because "minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." Burger King, 471 U.S. at 477-78, 105 S. Ct. 2174 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292, 100 S. Ct. 559 (1980)). In determining whether the exercise of jurisdiction is reasonable, the court should consider,

20

among others, the following factors: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy.  Intera, 428 F.3d at 618.

Here, the Pinals would be substantially burdened if they were compelled to litigate this case in Michigan, given the fact that they reside in the state of Nevada.[5]  Michigan, the forum state, has an interest in exercising jurisdiction over the Pinals because Children's Orchard is a resident of Michigan and the state has an interest in "protecting its residents' legal options."  Youn, 324 F.3d at 419.  However, under the facts of this case, the courts in Michigan would not have a strong interest in exercising jurisdiction over the Pinals, in that the dispute between Children's Orchard and the Nowlings is governed by the Franchise Agreement (discussed in greater detail *infra*).

For all the foregoing reasons, the Court finds that Children's Orchard has failed to establish this Court's personal jurisdiction over Defendants Ernesto and Maria Pinal, and Kid's Kloset.  Therefore, the Court will grant the Pinals motion to dismiss.

## B.     The Nowling's Motion/Petition to Compel Arbitration

Defendants Children's Orchard Store #142, Shirley and Todd Nowling, and The Nowling Company, filed the instant motion on February 24, 2010, seeking to stay the litigation and compel arbitration proceedings in light of an arbitration clause in the Franchise Agreement.  For the reasons explained below, the Court will grant the Defendants' motion.

---

[5]  They also cannot afford their own counsel.  Shirley Nowling is currently paying for their legal representation.

1.      **The Federal Arbitration Act**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, mandates that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; see also Glazer v. Lehman Brothers, Inc., 394 F.3d 444, 450-51 (6th Cir. 2005).  Under the FAA,

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which . . . would have jurisdiction . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.  If, as the Nowlings contend, the claims asserted in Children's Orchard's complaint are subsumed within an arbitration agreement entered into by the parties, then this Court "must stay the proceedings until the arbitration process is complete."  Glazer, 394 F.3d at 451 (citing 9 U.S.C. § 3).

2.      **Determination of Arbitrability**

As the Supreme Court held in AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648, 106 S. Ct. 1415 (1986), "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  Id. (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S. Ct. 1347 (1960)).  When such contractual provisions exist, "the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where

22

the result would be the possibly inefficient maintenance of separate proceedings in different forums." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217, 105 S. Ct. 1238 (1985). The Act "does not mandate the arbitration of all claims, but merely the enforcement—upon the motion of one of the parties—of privately negotiated arbitration agreements." Id. at 219, 105 S. Ct. 1238.

It is incumbent on this Court to determine as a threshold matter whether an agreement creates a duty for the parties to arbitrate a particular grievance or claim. AT&T, 475 U.S. at 649, 106 S. Ct. 1415. See also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625, 105 S. Ct. 3346 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."). This inquiry requires the Court to evaluate, first, whether a valid agreement to arbitrate exists between the parties and, second, whether the specific dispute at issue falls within the substantive scope of that agreement. Watson Wyatt & Co. v. SBC Holdings, Inc., 513 F.3d 646, 649 (6th Cir. 2008). In making this inquiry, the Court must turn to state contract law to determine whether the arbitration clause was validly obtained. Glazer, 394 F.3d at 451. Ultimately, it is well-established that any doubts regarding arbitrability must be resolved in favor of arbitration. Fazio v. Lehman Brothers, Inc., 340 F.3d 386, 393 (6th Cir. 2003).

Here, the parties do not dispute that a valid agreement and, within it, a valid arbitration clause exist. Thus, the sole issue before the Court is whether the present dispute falls within the substantive scope of the Franchise Agreement.

23

**2.      Arbitration Clause in the Franchise Agreement**

At the heart of this dispute is Section 29 of the Franchise Agreement, which

provides:

> A.      Except as specifically otherwise provided in this Agreement, the
> parties agree that *any and all disputes between them . . . shall be
> determined solely and exclusively by arbitration in accordance with
> the rules of American Arbitration Association* or any successor
> afterwards and the provision of this Section 24. Arbitration shall take
> place at an appointed time and place in Washtenaw County,
> Michigan.

> B.      . . . . Judgment upon any award of the majority of arbitrators shall be
> binding and shall be entered in a court of competent jurisdiction. The
> award of the arbitrators may grant any relief, which might be granted
> by court of general jurisdiction, including, without limitation, by
> reason of enumeration, award of damages and/or injunctive relief,
> and may, in the discretion of the arbitrators, assess, in addition, the
> costs of arbitration, including the reasonable fees of the arbitrators
> and reasonable attorneys' fees against either or both parties, in such
> proportions as the arbitrators shall determine.

> C.      *Nothing contained in this Agreement shall bar the right of either
> party to seek and obtain temporary injunctive relief from a court of
> competent jurisdiction in accordance with applicable law against
> threatened conduct that will cause loss or damage, pending
> completion of the arbitration.*

(Agreement § 29) (emphasis added).  In addition, Section 8 of the Agreement, which

addresses confidential information more specifically, provides:

> Due to the special and unique nature of the confidential information,
> proprietary marks, and Confidential Operating Manual of [Children's
> Orchard], you[, the franchisee,] now agree and acknowledge that
> [Children's Orchard] *shall be entitled to immediate equitable remedies,
> including but not limited to, restraining orders and injunctive relief in order
> to safeguard such information* of [Children's Orchard] and that money
> damages alone would be an insufficient remedy with which to compensate
> [Children's Orchard] for any breach of the terms of Paragraphs 5C, 6, 7 and

8 of this Agreement [which address Training and Assistance, Proprietary Marks, Confidential Operating Manuals, and Confidential Information].

(Agreement § 8(C)) (emphasis added).

**3.      The Arbitration Clause Covers This Dispute, Notwithstanding Plaintiff's Claim for Injunctive Relief.**

Under the express terms of the Franchise Agreement, the parties agreed to submit "any and all disputes" to arbitration.  (Agreement § 29(A).)  However, two specific provisions carve out a right to "immediate equitable remedies, including but not limited to, restraining orders and injunctive relief . . . to safeguard such [confidential] information of [Children's Orchard]," (Agreement § 8(C)), and a right to seek "temporary injunctive relief from a court . . . against threatened conduct that will cause loss or damage, pending completion of the arbitration," (Agreement § 29(C)).  The parties do not dispute that Section 29(A) is generally enforceable under the Federal Arbitration Act, nor do they dispute that Section 29(C) provides an exception to the arbitration clause for "temporary injunctive relief."  At issue is whether the language in Sections 8(C) and 29(C) render the entire dispute un-arbitrable.  Specifically, Children's Orchard argues that because it asserts, *inter alia*, a claim for immediate equitable relief in its Complaint—for example, return of the confidential operating manual and an immediate end to the use of Children's Orchard Marks, trade dress, and business system by Defendants—arbitration is not required under the terms of the Franchise Agreement.  For the reasons set forth below, the Court disagrees.

Where there is a broad arbitration clause, the presumption of arbitrability is "particularly applicable," and only an express provision excluding a particular matter from arbitration or "'the most forceful evidence of a purpose to exclude'" can prevail.  United Steelworkers of Am. v. Mead Corp., 21 F.3d 128, 131 (6th Cir. 1994) (quoting AT

& T, 475 U.S. at 650, 106 S. Ct. 1415 (internal citation omitted)).  Under Michigan law,

contracts must be read as a whole, giving harmonious effect to each word and phrase.

Wilkie v. Auto-Owners Ins. Co., 469 Mich. 41, 50 n. 11, 664 N.W.2d 776 (2003) (citing

Singer v. Goff, 334 Mich. 163, 168, 54 N.W.2d 290 (1952)).  Specific provisions

nevertheless normally override general ones.  Royal Property Group, LLC v. Prime Ins.

Syndicate, Inc., 267 Mich. App. 708, 719, 706 N.W.2d 426 (2005) (citing Sobel v.

Steelcraft Piston Ring Sales, Inc., 294 Mich. 211, 219, 292 N.W. 863 (1940); Haefele v.

Meijer, Inc., 165 Mich. App. 485, 498, 418 N.W.2d 900 (1987), *remanded on other*

*grounds*, 431 Mich. 853, 425 N.W.2d 691 (1988)).

In this case, the Court finds that it is possible to read the provisions in Sections 8,

29(A) and 29(C) in harmony, without overriding the presumption of arbitrability conjured

by the general language of Section 29.  Children's Orchard has asserted breach of

contract and Michigan Uniform Trade Secrets claims against the Nowlings, seeking a

declaration of rights under the Franchise Agreement, monetary damages, and preliminary

and permanent injunctive relief.  The Nowlings argue that Children's Orchard has not

asserted any claims that can reasonably be interpreted as seeking "temporary injunctive

relief" from a court of law, because there is no "threatened conduct" insofar as the alleged

sale or transfer has already taken place and the Pinals are already operating the allegedly

competing business.[2]  Children's Orchard counters that it has an absolute contractual right

_____

[2]  The Nowlings also point out that Section 8, which protects Children's Orchard's right
to obtain immediate equitable remedies to protect confidential information, proprietary
marks and Confidential Operating Manuals, does not override Section 29(A) because it
does not address *where* Children's Orchard may seek these remedies.  That is, it does not

to seek immediate injunctive relief from this Court to stop the ongoing misuse of its trade dress, trade secrets and business system. The Court finds that both parties overstate their arguments. On the one hand, Children's Orchard has clearly asserted facts which, if taken as true, constitute threatened conduct that endangers the franchisor's trade secrets and other confidential information. Moreover, there is no question that it is entitled to seek temporary injunctive relief from a court of law to protect its trade secrets. On the other hand, the fact that Children's Orchard has a right to seek temporary injunctive relief to protect those interests does not take the entire case out of reach of the arbitration clause. Rather, the Franchise Agreement, and in particular Section 29(C), merely provides an alternative forum to adjudicate requests for temporary restraining orders or preliminary injunctions, while arbitration moves forward. Section 29(C) states that any right Children's Orchard has to seek injunctive relief from this Court exists "pending

_____

specify a forum—arbitration vs. court—in which Children's Orchard may seek "immediate equitable remedies." Children's Orchard counters simply that because it has alleged a fraudulent and unlawful transfer of trade dress and other confidential materials, it may avail itself of Article 8 in this Court. The Court finds that the Nowlings have the better argument. Article 8 standing alone does not mandate that a claim of immediate equitable relief to protect confidential information be litigated *in a court*, particularly since equitable remedies are available under the American Arbitration Association Commercial Arbitration Rules, which are made applicable to the Franchise Agreement in Section 29. (Agreement § 29(B)); AAA Commercial Rules 34(a) ("The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods."). Accordingly, insofar as Defendants have threatened to damage or otherwise divulge Children's Orchard's confidential information, proprietary marks and Confidential Operating Manuals, under the terms of Section 8, Children's Orchard can seek injunctive relief either in an arbitration proceeding or in a court. Section 8 does not itself take Children's Orchard's claim outside the sweep of Section 29's general arbitration provision.

completion of the arbitration." The language of the exception directly contemplates the

arbitration of *all* disputes as required by Section 29(A), but permits a Court to effectively

freeze matters in the *status quo* or prevent further injury while the arbitration proceeds.

This echoes the general principle adopted by the Sixth Circuit that "in a dispute subject to

mandatory arbitration under the Federal Arbitration Act, a district court has subject matter

jurisdiction under § 3 of the Act to grant preliminary injunctive relief provided that the

party seeking the relief satisfies the four criteria which are prerequisites to the grant of

such relief." Performance Unlimited, Inc. v. Questar Publishers, Inc., 52 F.3d 1373, 1380

(6th Cir. 1995). While the Franchise Agreement contemplates precisely this type of

relief, Children's Orchard has not availed itself of temporary injunctive relief by simply

asserting a request for various forms of injunctive relief in its Complaint; tellingly, no

motion for preliminary injunctive relief or for a temporary restraining order has been filed

in this case to date.[3] The only issue before the Court is whether the dispute, as pleaded, is

arbitrable. The Court finds that it is, in that the Franchise Agreement is a valid agreement

to arbitrate between the parties and the specific dispute at issue here falls within the

substantive scope of that agreement. Therefore, the Court shall compel arbitration of this

dispute. In lieu of staying proceedings, the Court shall dismiss this case without prejudice

to either party's right to move to re-open for entry of an arbitration award or for any other

---

[3] Furthermore, because the Court dismisses the Pinals and Kid's Kloset from this action, as discussed in section A of this Opinion and Order, *supra*, it is unclear what the exact contours of a motion for preliminary injunction in this action would seek or whether such a motion would even be appropriate. Nevertheless, without such a motion pending, such questions clearly have no bearing on the arbitrability of this dispute.

relief to which the parties may be entitled.  See <u>Alford v. Dean Witter Reynolds, Inc.</u>, 975 F.2d 1161, 1164 (5th Cir. 1992) (holding that under the Federal Arbitration Act court may dismiss, rather than stay, case when *all* of the claims must be submitted to arbitration); <u>see also</u> <u>Hensel v. Cargill, Inc.</u>, No. 99-3199, 1999 WL 993775, *4 (6th Cir. Oct.19, 1999) (rejecting an argument that dismissal was improper, citing <u>Alford</u> with approval, and holding that dismissal is proper when all claims in a suit are submitted to arbitration); <u>Ozormoor v. T-Mobile USA, Inc.</u>, No. 08-11717, 2008 WL 5188772 (E.D. Mich. Dec. 9, 2008) (listing cases).

## IV.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants Maria Pinal, Ernesto Pinal, and Kid's Kloset's Motion to Dismiss Under Rule 12(b)(2) [Dkt. #10] is GRANTED.

IT IS FURTHER ORDERED that Defendants Children's Orchard Store #142, Shirley Nowling, Todd Nowling and The Nowling Company's Motion (Petition) to Stay This Litigation and Compel Arbitration [Dkt. # 11] is GRANTED IN PART.

IT IS FURTHER ORDERED that Plaintiff Children's Orchard, Inc., and Defendants Children's Orchard Store #142, Shirley Nowling, Todd Nowling and The Nowling Company are directed to proceed with arbitration of their claims pursuant to the terms of the Franchise Agreement.

IT IS FURTHER ORDERED that, in lieu of staying proceedings, this case should

be DISMISSED without prejudice to Plaintiff Children's Orchard, Inc., and Defendants

Children's Orchard Store #142, Shirley Nowling, Todd Nowling and The Nowling

Company's right to move to re-open this case for entry of an arbitration award or for any

other relief to which the parties may be entitled.

SO ORDERED.


s/Gerald E. Rosen
Chief Judge, United States District Court


Dated: May 28, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on
May 28, 2010, by electronic and/or ordinary mail.

s/Ruth A.Gunther
Case Manager
(313) 234-5137